IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**BYRON K. DANIELS**                                                                                           **PLAINTIFF**

v.                                      **CASE NO. 4:16-CV-00749 BSM**

**DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, et al.**                                                  **DEFENDANTS**

<u>**ORDER**</u>

The motions to dismiss filed by defendants Department of Housing and Urban Development [Doc. No. 26], Sunset Terrace, Metropolian Housing Alliance, Robyn Hornes, Kathy Washington, and Kalimba Summerville [Doc. No. 14] are granted, and plaintiff Byron Daniels's motions for default judgment, judgement on the pleadings, and summary judgment [Doc. No. 24] are denied.

I.   BACKGROUND

Accepting plaintiff Byron Daniels's allegations as true, the material facts are as follows. Lou White, Daniels's mother, leased a two-bedroom unit at Sunset Terrace, a property owned and operated by Housing Authority of the City of Little Rock, d/b/a Metropolitan Housing Alliance ("MHA"). Compl. ¶¶ 4–6, Doc. No. 2. As an accommodation to White's disability, Daniels was permitted to live with White as a live-in aide. *Id.* Daniels signed a live-in aide agreement in which he agreed he was an "employee of Lou White" and that he "ha[d] no other rights to the unit." *Id.* ¶ 11 (referencing live-in aide agreement); *id.* n.1 (describing agreement); Doc. No. 3 at 6 (live-in aide agreement). The agreement also provided that "[i]f the employer/employee relationship is severed,

[Daniels] will move out of the unit immediately", and "[i]f [White] dies,[Daniels] has no right to remain in the unit and will vacate the apartment immediately." Doc. No. 3 at 6.

On September 16, 2016, White passed away. Daniels, however, did not vacate the apartment immediately. He spoke to defendants Robyn Hornes, property manager, and Kalimba Summerville, assistant property manager, about transferring White's unit into Daniels's name. Compl. ¶ 11. Daniels was told he could not live in White's two-bedroom unit by himself and that he had no continued right to occupy the unit after his mother's passing. *Id.* In response, Daniels attempted to add his six-year old nephew to a lease. Apparently, Hornes or Summerville worked with defendant Kathy Washington, interim director of asset management, to either get approval of this relationship or to get approval to transfer tenancy of White's unit into Daniels's name. The requests were denied. *Id.*

Daniels refused to move out and filed suit for money damages and an injunction. He sued Sunset Terrace; MHA; Hornes; Summerville; Washington; and the Department of Housing and Urban Development ("HUD"). He claims defendants (1) unlawfully discriminated based on familial status, race, and gender; (2) breached fiduciary duties; (3) caused a contract to be signed under duress; and (4) refused live-in aides housing in an unconstitutional manner. Defendants have all moved to dismiss, and Daniels moves for judgment on the pleadings, for summary judgment, and for default judgment.

II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiff fails to

2

state a claim upon which relief may be granted. To meet the 12(b)(6) standard, a complaint must allege sufficient facts to entitle the plaintiff to the relief sought. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although detailed factual allegations are not required, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Id.* In ruling on a 12(b)(6) motion to dismiss, materials embraced by the pleadings, as well as exhibits attached to the pleadings and matters of public record, may all be considered. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

### III.   DISCUSSION

All of Daniels's claims are dismissed either because a party is immune or because he has failed to state a claim upon which relief may be granted.

Before analyzing Daniels's claims, one observation is necessary. The gravamen of Daniels's claims against defendants is that he acquired some property interest in White's apartment after becoming a live-in aide, and when defendants refused to allow him to remain in White's apartment after her passing, his property interest was impaired. This is a fundamental misunderstanding of how one acquires property interests in an apartment. A property interest arises from a written lease agreement for the unit in question, rather than simply occupying the unit as caregiver. *See* 24 C.F.R. § 982.308 ("The tenant and the owner must enter a lease for the unit. The lease must be executed by the owner and the tenant."); *see also* Ark. Code Ann. § 18-17-301(15) (defining "tenant" as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others"). Here, there was no

lease agreement between Daniels and defendants, and Daniels's only right to occupy White's unit was premised on him providing caregiving services to White.

With that understanding in mind, each of Daniels's claims will be discussed in turn.

### A. Daniels's Motion for Default Judgment [Doc. No. 29]

Daniels's motion for default judgment is denied. Daniels moved for default judgment against HUD because of its failure to answer or move for dismissal in time. Doc. No. 29. A clerk's entry of default has not been entered, which must precede a grant of default judgment under Rule 55(b). *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998). Even if an entry did occur, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2011); *see Ackra Direct Mktg Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (review of order on default judgment is for abuse of discretion); *Oberstar v. Federal Deposit Ins. Corp.*, 987 F.2d 494, 504 (8th Cir. 1993) ("We have frequently endorsed the strong judicial policy against default judgments. Applying this policy, we recently held a district court abused its discretion by entering a default judgment for a marginal failure to comply with the time requirements.") (citations and quotation omitted). As discussed below, Daniels's claims against HUD must be dismissed, and therefore his request for default judgment is denied. *See* Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies *only if the claimant establishes a claim or right to relief by evidence that satisfies the court*.") (emphasis added).

B. <u>HUD</u>

Daniels's claims against HUD for violating the Fair Housing Act (Title VIII of the Civil Rights Act of 1968), 42 U.S.C. § 1982, 42 U.S.C. § 1983, and state tort law are dismissed. As explained below, Daniels's claims are barred by sovereign immunity, but even if they were not, he has failed to state a claim.

First, Daniels's claims are barred by sovereign immunity. The sovereign immunity doctrine provides that the "United States may not be sued without its consent and [the] existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Thus, unless waived, "sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Any waiver of immunity must be by federal statute, *see, e.g., Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999), and purported waivers must be strictly construed in favor of the government, *S.E.C. v. Credit Bancorp., Ltd.*, 297 F.3d 127, 136 (2d Cir. 2002).

Although the Housing Act, 42 U.S.C. § 1437 *et seq.*, contains a limited waiver, this waiver is only for suits against HUD with respect to its functions under the Housing Act, not whether local entities discriminated against tenants in violation of the Fair Housing Act. 42 U.S.C. § 1404a ("[t]he Secretary of Housing and Urban Development [to] be sued *only with respect to its functions under the United States Housing Act of 1937, as amended, and title II of Public Law 671 . . . .*") (emphasis added); *see Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir. 1979) (1979) ("The direct claims against HUD

are barred by sovereign immunity because the United States has not consented to suit under the civil rights statutes."); *City of Shaker Heights v. Shaker Heights Hous. Assocs*, Case No. C85-9, 1985 U.S. Dist. LEXIS 23207, at *17-18 (N.D. Ohio Jan. 23, 1985) ("Claims against HUD under Title VIII of the Civil Rights Act of 1968 . . . are barred because they do not fall within any applicable waiver of the United States' sovereign immunity."). Similarly, the waiver would also not apply to general claims under the civil rights statutes. *See Little Earth of United Tribes, Inc. v. U.S. Dept. of Housing and Urban Development*, 584 F. Supp. 1292, 1300 (D. Minn. 1983) ("[Section] 1404a . . . do[es] not constitute a waiver of sovereign immunity with respect to the civil rights statutes and constitutional claims[.]").

Furthermore, Daniels's claims against HUD must be dismissed because he made no factual allegation against the agency. His claims focus entirely on actions done by Sunset Terrace, MHA, Summerville, Hornes, and Washington. Although he collectively references the defendants having "produced, implemented, and enforced a policy that was unfair" or "knowingly and willingly requir[ing Daniels] to sign a waiver giving up his rights," he provides no factual allegation to substantiate these conclusions. Compl. ¶¶ 24-25; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (a complaint "requires more than labels and conclusions"). Put simply, he alleged improper conduct against five of the six defendants, but then concludes the sixth defendant must have been liable in some undisclosed way.

These issues aside, there are also fundamental flaws with Daniels's claims. For example, he alleges HUD, a federal agency, committed civil rights violations under 42

6

U.S.C. § 1983, but "[o]nly *state* actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (emphasis added). Although Daniels is correct that *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), implied a cause of action against federal actors, a *Bivens* action is not an action brought under section 1983. Moreover, the *Bivens* doctrine is limited to suits against an individual who violated one's rights, not an entire federal agency. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). As another example, Daniels has not alleged that he first presented his tort claims to the appropriate federal agency before filing suit as required. 28 U.S.C. § 2675(a); *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011); *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to head that clear statutory command, the District Court properly dismissed his suit.").

Accordingly, all claims against HUD are dismissed.

    C.    <u>Unlawful Discrimination Based on Familial Status, Race, and Sex</u>

        *1.*    *Familial Status (Counts One and Three)*

Defendants' motion to dismiss is granted because Daniels has not alleged familial status discrimination.

The Fair Housing Act, 42 U.S.C. § 3601 *et seq*, prohibits housing discrimination, which includes refusing to rent, sell, or negotiate on the basis of a protected class. 42 U.S.C. § 3604(a)-(b). One such protected class is familial status. Familial status is defined as "one

7

or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person." *Id.* § 3602(k)(1)-(2).  Here, Daniels has not stated a claim because he failed to plead facts suggesting he (1) is his nephew's parent or legal custodian or (2) a designee with written permission permitting his nephew to live with him.  *See, e.g., Anderson v. Herbert*, Case No. 2:13-CV-211 RJS/BCW, 2014 U.S. Dist. LEXIS 167879, at *9 (D. Utah Oct. 22, 2014), *recommendation adopted*, 2014 U.S. Dist. LEXIS 166371, at *2 (D. Utah Dec. 1, 2014).

Count three is similar to count one and must be dismissed for the same reason.  Count three alleges "discriminatory pretext evidence of discrimination based on familial status." Compl. ¶¶ 35-41 (footnote omitted).  In other words, Daniels alleges defendants discriminated against him based on familial status but mask that intent by evicting him because his live-in aide status was terminated.  Of course, an assumption here is that Daniels fits the familial status definition, which he does not.

Accordingly, counts one and three are dismissed for the failure to state a claim upon which relief may be granted.

### 2.   *Race and Sex Discrimination (Count Five)*

Defendants' motion to dismiss count five is granted because Daniels has not alleged defendants discriminated against him based on his race or sex.

Daniels argues that defendants prefer single fathers (*i.e.*, a single male with a child matching the familial status definition over single males without children) and that these actions have a "discriminatory effect" on single, black males. Compl. ¶ 45-47. Alleging a discriminatory effect of facially neutral policies requires more than concluding such an effect exists. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (quotations omitted). The Supreme Court directed lower courts to "examine with care whether a plaintiff has made out a prima facie case of disparate impact" so that cases failing to sufficiently allege a violation reach a "prompt resolution." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523–24 (2015). This is one such case that must be promptly dismissed before discovery ensues.

Daniels made no allegation supporting his disparate impact claim. *See Inclusive Communities*, 135 S. Ct. at 2523 ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."); *Gallagher v. Magner*, 619 F.3d 823, 834 (8th Cir. 2010) (A prima facie case for disparate impact claims requires "that the objected-to actions resulted in a disparate impact upon protected classes compared to a relevant population."). Daniels cannot complain of discrimination based on race or sex when a white man without children or a black woman without children would been treated the same. He made no allegations

9

suggesting how anyone else other than him was impacted or would be impacted, but simply that he did not receive preferential treatment with respect to the apartment unit he preferred.

Although reaching outside Daniels's complaint is improper, the reality of this conclusion was clear at the preliminary injunction hearing. Daniels's request to live in White's two-bedroom unit was denied but the parties acknowledged Daniels was *approved* for a one-bedroom unit, but he would be placed in a queue of others approved for housing. Daniels would receive preferential treatment if he obtained a "homeless certification," but he had not done so. *See* Doc. No. 15 at 2; Doc. No. 7 at 4. Instead, he filed suit to prevent his eviction. This demonstrates that there was no discrimination – whether directly or implied through disparate impact – simply because Daniels did not receive his preferred unit.

Accordingly, count five is dismissed for the failure to state a claim upon which relief may be granted.

### D. Breach of Fiduciary Duty (Count Two)

Defendants's motion to dismiss count two is granted because there was no fiduciary duty owed.

Daniels alleges that defendants breached their fiduciary duty "to act [in] good faith and fair dealing" with clients. Compl. ¶ 20. He alleges he was a "pre-existing household member" of White's unit "and did not qualify as a live-in aide." *Id.* ¶ 19. In signing the live-in agreement, he claims he "was not properly advised" that he was giving up his status as White's biological son. *Id.* ¶ 22.

10

Again, Daniels is placing the cart in front of the horse as defendants owed no fiduciary duty to him. At its core, breaching a fiduciary duty "involves a betrayal of trust and benefit by the dominant party at the expense of one under its influence." *Cole v. Laws*, 76 S.W.3d 878, 883 (Ark. 2002). A simple business deal or contract does not create such a relationship; rather, a fiduciary duty arises when a "particular relationship of trust or confidence developed because of the agreement." *Evans Indus. Coatings, Inc. v. Chancery Court of Union Cty., Third Div.*, 870 S.W.2d 701, 703–04 (Ark. 1994). The only relationship here was between White and Daniels as employer-employee, and Daniels acknowledged this was the nature of the relationship in his live-in agreement. Doc. No. 3 at 6. There is nothing inherently special about a landlord and a tenant's live-in caregiver that creates a relationship based on trust or confidence to create a fiduciary relationship. *See, e.g., W. Memphis Adolescent Residential, LLC v. Compton*, 374 S.W.3d 922, 926–27 (Ark. Ct. App. 2010) (agreements do not necessarily create fiduciary relationships).

Accordingly, defendants' motion to dismiss count two is granted for the failure to state a claim upon which relief may be granted.

E.   Contractual Duress (count three)

Daniels alleges defendants unlawfully forced him to give up his rights as White's family member during a time when his mother was in need of a live-in caregiver. Defendants' motion to dismiss count three is granted.

The fact that Daniels had no property interest aside, "contractual duress" is not a cause

11

of action. Duress is an affirmative defense that justifies voiding a contract if it is shown "he voluntarily accepted the terms of the opposing party, that the circumstances permitted no other alternative, and that the circumstances resulted from coercive acts by the opposing party." *Newsom v. Rabo Agrifinance, Inc.*, 427 S.W.3d 688, 697 (Ark. 2013). Daniels has not been sued on the basis of any contract and the live-in agreement he claims was signed under duress has little to do with the lack of any entitlement to White's old apartment.

Daniels's claims all ask that he remain in White's apartment, which he has no property interest in *regardless of whether he signed the live-in agreement or not*. Thus, even if the live-in agreement was cancelled, he still has no right to the apartment. The agreement allowed him to temporarily live in White's apartment while he provided caregiving services, but after White's passing, Daniels was no longer providing those services. As such, he could no longer live in the apartment. The fact that he is White's son is of no consequence; a right to occupy requires consent of the landlord and tenant, and no such rental agreement existed between Daniels and any of defendants.

Accordingly, defendants' motion to dismiss count three is granted because of the failure to state a claim upon which relief may be granted.

    F.    <u>Refusing Live-in Aides is Unconstitutional (Count Four)</u>

Defendants' motion to dismiss count four is granted because Daniels stated no cause of action.

Daniels alleges live-in aides are permitted to occupy dwelling space, yet they acquire

"separate[] but equal" rights as tenants in violation of the Constitution. Compl. ¶ 52. As has been stated many times before, Daniels assumes he acquired a property interest in White's apartment (apparently, a separate but equal right to White's interest) when he became her caregiver. Doc. No. 3 at 6. Daniels acquired no rights, however, as his permission to temporarily live with White was premised on his caregiver status.

Daniels's concern that parties similar to defendants may "lie" and refuse housing because someone was a "live-in [a]ide]" is misplaced. Compl. ¶ 52. Daniels was not refused housing after White passed away. Rather, Daniels's permission to occupy the unit was connected to his services to White. Without White, Daniels had no permission to occupy. After White's passing, Daniels's ability to reside in the unit was terminated and he was required to vacate immediately. Indeed, he signed an agreement acknowledging this reality. Doc. No. 3 at 6.

This situation makes sense. Presumably, White was not forced to have her son as her live-in caregiver. If she selected a non-family member, Daniels's argument would then allow that non-family member to live in White's apartment without competing with everyone else waiting for housing, such as Daniels himself. The fact Daniels was also White's son does not impact the analysis.

Accordingly, defendants' motion to dismiss count four is granted for the failure to state a claim upon which relief may be granted.

IV.   CONCLUSION

Accordingly, defendants' motions to dismiss [Doc. Nos. 14, 26] are granted, and Daniels's motions [Doc. No. 24] are denied. All claims are dismissed with prejudice.

IT IS SO ORDERED this 25th day of July 2017.

_____
UNITED STATES DISTRICT JUDGE